[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-12581
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 21, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00243-CR-UWC-HGD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES WINFORD MCCLURE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 21, 2005)

Before ANDERSON, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

James Winford McClure appeals his convictions for possession with intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1), and for being a convicted felon in possession of a firearm, 18 U.S.C. § 922(g). McClure asserts the district court erred by denying his motion to suppress evidence seized pursuant to a search warrant he believes lacked probable cause and any indicia of reliability. The district court did not err, and we affirm.

## I. BACKGROUND

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). We review the district court's findings of fact under the clearly erroneous standard, and the district court's application of the law to those facts de novo. *Id.* "[A]ll facts are construed in the light most favorable to the prevailing party." *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000). "The individual challenging the search has the burdens of proof and persuasion." *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).

A. *Probable Cause in the Affidavit for Search Warrant*

The Fourth Amendment provides the right to be free of unreasonable searches and seizures, and mandates "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "Probable cause

2

to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (citation omitted). Furthermore, probable cause "is a fluid concept—turning on the assessment of probabilities in particular factual contexts." *Id.* (quotation and citation omitted). We afford "great deference" to a trial court's determination of probable cause. *Id.*

As we have noted:

> Under the *Gates*[1] totality of the circumstances test, the 'veracity' and 'basis of knowledge' prongs . . . for assessing the usefulness of an informant's tips, are not independent. '[T]hey are better understood as relevant considerations in the totality of the circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for . . . by a strong showing as to the other[.]'

*Id.* at 1352–53. At the outer limits of probable cause determinations, we have held in addition to independently corroborating an informant's facts, creating circumstances where the informant is unlikely to lie can also corroborate the informant's tip. *See United States v. Foree*, 43 F.3d 1572, 1576–77 (11th Cir. 1995) (upholding search warrant where there was a substantial basis for the magistrate's finding of probable cause, especially in light of the fact "the CI was

---

[1] *Illinois v. Gates*, 103 S. Ct. 2317 (1983).

3

unlikely to be untruthful, for, if the warrant issued, lies would likely be discovered in short order and favors falsely curried would dissipate rapidly.").

Here, the affidavit for the search warrant does not explicitly state any grounds for believing Informant Henley's information was reliable, or the circumstances through which Henley made his disclosure to police. Officer Creel testified he may have told the issuing judge of the circumstances surrounding Henley's disclosure, and, in fact, was "pretty sure" he had. However, it is unclear that he did, and the affidavit is devoid of any corroborative evidence showing Henley was unlikely to lie. Thus, to the extent the magistrate was unaware of the circumstances surrounding Henley's disclosure of information, it is arguable the failure to include some indicia of reliability to back Henley's statements rendered it insufficient for a probable cause determination, although Henley's basis for knowledge does appear to have been firsthand. Even assuming the magistrate should not have issued the warrant without some indicia of reliability in spite of the specific and detailed descriptions and Henley's firsthand knowledge, the evidence seized is not subject to exclusion as explained below.

B. *The* Leon *Good Faith Exception*

"Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution." *United States v. Martin*, 297

F.3d 1308, 1312 (11th Cir. 2002). "The exclusionary rule, as it is known, is 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *Id.* (citation omitted). One exception to the exclusionary rule is the good faith exception set forth by the Supreme Court in *United States v. Leon*, 104 S. Ct. 3405 (1984). *Martin*, 297 F.3d at 1308.

The *Leon* exception "stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *Martin*, 297 F.3d at 1313. Moreover, we have held we "can look beyond the four corners of the affidavit and search warrant to determine whether [the officer] reasonably relied upon the warrant." *Id.* at 1318. The *Leon* exception applies in all but four circumstances, one of which, as relied upon by McClure,[2] is "where the affidavit supporting the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* at 1313 (citation omitted). However, "[t]he *Leon* good faith exception requires suppression 'only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *Id.* (citation omitted). "The purpose of the exclusionary rule is to deter

---

[2] McClure does not argue any of the other three possible exceptions to the *Leon* rule apply.

unlawful police misconduct; therefore, when officers engage in 'objectively reasonable law enforcement activity' and have acted in good faith when obtaining a search warrant from a judge or magistrate, the *Leon* good faith exception applies." *Id.*

Going outside the four corners of the affidavit and warrant, Officer Creel was not dishonest or reckless in his affidavit for procuring a search warrant, and his belief that probable cause existed was objectively reasonable. *See id.* at 1318 (holding the court could go outside the four corners of the affidavit and warrant when determining if the officer reasonably relied on the warrant). First, Creel's belief that Henley was unlikely to lie was not unreasonable as the favor Henley sought by disclosing information to Creel was likely to dissipate rapidly (and would have) if the information turned out to be false. *See Foree*, 43 F.3d at 1576–77. Second, Henley's descriptions were specific and based on firsthand knowledge and personal observation of drugs, cash, and guns located in McClure's residence. Creel's affidavit explicitly listed dates on which Henley visited McClure's residence, and Henley provided Creel with detailed instructions about where to look for the drugs once inside McClure's residence. In short, McClure and his residence were linked in time and place to criminal activity, and, therefore, whatever deficiencies admittedly plagued Creel's affidavit, his belief probable

6

cause existed was not objectively unreasonable, and he was at most neglectful, but not dishonest or reckless when he submitted his affidavit to the issuing judge.

While the affidavit may have suffered from some deficiencies, it was not entirely unreasonable for Creel to believe his affidavit supported a finding of probable cause, as it tied the defendant to the residence and the criminal activity with specific dates, and, therefore, sufficient information was contained within to conclude that a fair probability existed that seizable evidence would be found in the place to be searched. *See Martin*, 297 F.3d at 1315 ("despite its deficiencies as to the specific dates and times and exact links to [the defendant], we find that it was *not entirely unreasonable* for [the officer] to believe that what he wrote in the affidavit would be sufficient to support a finding of probable cause. The affidavit contained sufficient indicia of probable cause to enable a reasonable officer to execute the warrant thinking it valid."); *see also Gates*, 103 S. Ct. at 2330–31 (recognizing affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area."). Thus, the affidavit had more than an indicia of probable cause and it was not unreasonable for Creel to rely on the warrant.

## II. CONCLUSION

While Creel's affidavit may have been deficient by failing to note the circumstances providing an indicia of reliability to Henley's information providing grounds for probable cause, Creel was not dishonest or reckless, and his belief probable cause existed was not so objectively unreasonable as to warrant exclusion of the seized evidence in light of *Leon*'s good faith exception. The district court did not err in denying the motion to suppress.

AFFIRMED.